UNITED STATES v. DEBELL et al.

(Circuit Court of Appeals, Eighth Circuit. September 29, 1915.)

No. 4352.

INDIANS ⊂⊃15—LANDS—FRAUDULENT ACQUISITION FROM ALLOTTEE.

Where, through misleading representations made by an Indian agent acting in the interest of a would-be purchaser, the Secretary of the Interior was led to believe that an Indian allottee was competent and capable of managing her own affairs, and caused to be issued to her a patent in fee simple, as authorized by Act May 8, 1906, c. 2348, 34 Stat. 182, whereas she was in fact wholly incompetent, and sold the land for much less than its

value to such purchaser, who sold and conveyed it to an innocent purchaser, the United States is entitled to a decree against the first purchaser for the difference between the amount he paid and the fair value of the land for the benefit of the allottee.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. ☞15.]

Appeal from the District Court of the United States for the District of South Dakota; Jas. D. Elliott, Judge.

Suit in equity by the United States against E. J. Debell, William H. Lynn, and Royal Mutual Life Insurance Company. Decree for defendants, and complainant appeals. Reversed.

See, also, 227 Fed. 775, —— C. C. A. ——.

E. W. Fiske, Asst. U. S. Atty., of Sioux Falls, S. D. (Robert P. Stewart, U. S. Atty., of Deadwood, S. D., and George Philip, Asst. U. S. Atty., of Sioux Falls, S. D., on the brief), for the United States.

William G. Porter, of Aberdeen, S. D. (E. L. Grantham, of Aberdeen, S. D., and Maurice Rose, of Minneapolis, Minn., on the brief), for appellees Debell and Royal Mut. Ins. Co.

Charles P. Bates, of Sioux Falls, S. D. (William A. Schumacher and Rexford M. Sheild, both of Sioux Falls, S. D., on the brief), for appellee Lynn.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

SANBORN, Circuit Judge. This is another case wherein, as in United States v. Debell and Butterfield, 227 Fed. 760, —— C. C. A. ——, a patent in fee simple and a deed to Debell were procured for land theretofore held in trust for Big Old Woman, a Rosebud Sioux Indian of the full blood. The United States brought suit to set aside the patent, the deed to Debell, and subsequent deeds through which the land was conveyed to William H. Lynn, a bona fide purchaser for value who on June 18, 1909, mortgaged it for $2,500 to the Royal Mutual Life Insurance Company, a bona fide mortgagee.

There were two acts of Congress under which the land of an Indian allottee which was held in trust for him or her by the United States with no power of alienation in him or her might be sold and conveyed, Act of May 8, 1906, 34 Stat. c. 2348, pp. 182, 183, which provided that whenever the Secretary of the Interior should be satisfied that any Indian allottee was competent and capable of managing his or her affairs he might cause a patent in fee simple to be issued to him or her, and thereafter all restrictions on his or her alienation of the land should be removed, and Act of March 1, 1907, 34 Stat. c. 2285, p. 1018, which provided that any noncompetent Indian to whom a patent containing a restriction on alienation had been issued for an allotment of land might sell or convey all or any part of such allotment on such terms and subject to such conditions as the Secretary of the Interior should prescribe, and that the proceeds derived therefrom should be used for the benefit of the allottee under the supervision of the Commissioner of Indian Affairs. The responsibility for the care, management, and disposition of the proceeds

of the sale under the former act was in the Indian allottee free from all restraints. The responsibility for the care, management, and disposition of the proceeds of the sale under the latter act was in the Commissioner of Indian Affairs, and it was his duty to see that they were applied to the use and benefit of the allottee in such a way as in his judgment would most conduce to his or her support and comfort.

Big Old Woman had all the characteristics of the native Indians. She could not read or write the English language. She had never conducted any business or done anything of that nature, except that she tanned and painted buffalo hides many years before the transactions here in question. She had never lived among the white people. She drew her monthly rations from the government, and had done so for 20 years. She had a son who had been an Indian policeman, and she had a daughter, and she lived a part of the time with one and a part of the time with the other. She knew nothing about the value of land or of money, was 83 years old, blind, continually sick, and in her dotage. It was the duty of the Indian agent Kelley to make and keep rolls or lists of the noncompetent land of the Indians. This duty had been imposed by him upon Mr. Schmidt, the issue clerk at the agency, and Schmidt had enrolled or listed the land of Big Old Woman as noncompetent land. On May 15, 1908, she presented an application to sell 160 acres of this land as a noncompetent Indian under the Act of March 1, 1907. In that application she averred that she was unable, by reason of old age and infirmity, being 80 years old, to improve or cultivate the land or use it advantageously for the support of herself, for which it was needed, and she agreed that the proceeds of the land should be placed to her credit in some bank, subject to her check for amounts not exceeding $10 per month when approved by the agent or other officer in charge, and for sums exceeding $10 per month upon the approval of the Commissioner of Indian Affairs. Schmidt posted the requisite notice of this application, and he never knew that there was any application for or recommendation of a patent in fee simple of this land until the patent was received from Washington in September, 1908. Meanwhile, on June 1, 1908, Kelley, the Indian agent, wrote the Commissioner that he sent him the trust patent and an application of Big Old Woman for a patent in fee, and that he recommended that she be granted such a patent. He failed to state in his letter that she was competent to manage her own affairs, or any facts indicating such competency, and the Commissioner on June 11, 1908, wrote a letter to him, in which he called his attention to this fact and requested him "to make an additional report relating to her competency." This was Kelley's answer:

"Sir: I have the honor to acknowledge receipt of office letter 'Land' 37571-1908, E. S. S.. Subject:—Asks information as to competency of an Indian.

"Big Old Woman or Two Eagle is a very respectable old woman, living with her son and his family, formerly a policeman on this reservation. They are well to do people, able to manage their own affairs and take care of themselves. Big Old Woman is getting infirm, and as she is asking for a patent in fee for only part of her allotment, I respectfully recommend that her request be granted, as I am satisfied she will never be without a means of support."

The conclusion of the court from the evidence is that Big Old Woman was incompetent and incapable to manage her own affairs, and especially to sell her land and to manage, invest, and dispose of its proceeds with any reasonable degree of prudence, care, or judgment, and these evasive letters of the Indian Agent leave little doubt that he knew that fact, but, evading a direct answer to the question about her competency, was recommending and endeavoring to procure a patent in fee simple in violation of the policy, the legislation, and the express restriction on alienation of this land which it was his duty to enforce. He succeeded. A patent in fee simple for the land in controversy was issued dated September 8, 1908. About September 22, 1908, Debell went to Big Old Woman, about 16 miles from the agency, gave her $50, promised to pay her $1,500 for the land, and caused her to touch the pen to her mark on a deed from her to him of the 160 acres in controversy for the consideration of $1,500, according to the recital in the deed. This $1,500 was nearly all paid out by him, according to his account book, between September 14, 1908, and April 16, 1909. About the latter date an investigation of this transaction was commenced, and thereafter Debell paid the son of Big Old Woman $1,000 more, making $2,500 in all for the land. The defense upon which counsel seem to rely much is that Big Old Woman verbally gave this land and its proceeds to her son and daughter, and authorized the son to sell it for her, that he conducted the negotiations with Debell for the sale, and that he was present consenting when Debell caused Big Old Woman to touch the pen upon her mark on the deed. But the prohibition of the alienation of her land by this incompetent Indian woman as imperatively forbade its alienation to or for the benefit of her son as it did to or for the benefit of any other person. Nor did the son's consent to or participation in the transaction in the least relieve it of the vice of an evasion or violation of the policy and the legislation against alienation and the express restriction thereof. It was not the consent of the son of Big Old Woman, but the consent and authority of the United States, honestly secured upon a presentation of the actual facts of the case, that was indispensable to the validity of the patent in fee and the subsequent deed to Debell. It is useless to recite more of the evidence or to discuss it. It is sufficient to say that it has convinced the court that the patent in fee simple was obtained by representations which, though not literally false, were intended to, and did, mislead and deceive the Secretary into issuing a patent in fee simple to an incompetent Indian woman, in the belief that she was competent, that Kelley and Debell knew that this woman was incompetent, and that the patent to her was an evasion or violation of the restriction on the alienation of her land, and that the United States is entitled to the same measure of relief granted in the case of United States v. Debell and Butterfield, to the opinion in which reference is here made for the rules and principles of equity and their application to the facts which have led the court to this result. Debell sold the land on February 2, 1909, for $4,000, he paid $2,500 for it, and the United States may recover the difference, $1,500 with interest. Let the

decree below be reversed, and let a decree be rendered in favor of the United States in the form prescribed in the case of Debell and Butterfield.